UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF LIBYA,

        *Petitioner*,

v.

STRABAG SE,

        *Respondent*.

No. 1:20-cv-02600 (DLF)

**MEMORANDUM OPINION AND ORDER**

This case arises out of an arbitration between Libya and Strabag SE (Strabag) over a series of construction contracts that were disrupted by the 2011 Libyan revolution. Before the Court is Libya's Petition to Vacate the Arbitration Award, Dkt. 1, and Strabag's Cross-Motion to Confirm the Arbitration Award, Dkt. 12. For the reasons that follow, the Court will deny Libya's petition and grant in part Strabag's cross-motion.

**I.     BACKGROUND**

Respondent Strabag is a publicly listed, international construction firm that is incorporated in Austria. Resp't's Opp'n to Libya's Pet. to Vacate at 4, Dkt. 11. Following the relaxation of international sanctions on Libya in 2003, Strabag, through its wholly owned German subsidiary, Strabag International Ltd. (Strabag International), was awarded contracts to construct two major road projects in Libya. Arbitration ¶¶ 4–5, Dkt. 1-3; Resp't's Opp'n at 6. In 2006, Libya started "requiring that foreign firms engaged in construction carry on business in conjunction with a Libyan partner." Arbitration ¶ 6.

In July 2007, to comply with this new requirement, Strabag International entered into a joint venture with the Libyan Investment and Development Company (LIDCO). *Id.* They called

the venture Al Hani General Construction Company (Al Hani). *Id.* ¶ 7. Strabag indirectly owns sixty percent of Al Hani via its one hundred percent ownership of Strabag International. *Id.* ¶ 7. Strabag International's existing contracts in Libya were assigned to Al Hani which then "subsequently entered into several additional" construction contracts with Libya. *Id.* ¶ 59. Strabag contends that it "committed significant resources" to its "investment" in Al Hani and the Libyan contracts in the form of "acquiring property, building large facilities, . . . importing large quantities of heavy equipment[,]" and "extend[ing] Al Hani a significant line of credit to ensure the subsidiary had sufficient working capital when it was suffering from serious cash flow problems." Resp't's Opp'n at 6.

Each of the two contracts entitled Al Hani to an advance payment (one for fifteen percent of the contract's value, the other for twenty percent) from the Libyan government entity responsible for the contract. Arbitration ¶ 65. These advance payments were to be repaid through discounts in the amounts owed to Al Hani for the work completed. *Id.* The contracts further required that Al Hani secure irrevocable bank guarantees "to be released only after completion of all work under the Contracts and the expiry of the remedial period under the guarantee period." *Id.*

In February 2011, armed conflict broke out in Libya between the Libyan government and rebel forces. *Id.* ¶ 75. As the conflict spread across Libya, Al Hani halted construction and began moving its employees and equipment to safer locations. *Id.* ¶ 76. Al Hani suffered significant losses from both the government's own forces and the "breakdown of law and order." *Id.* ¶ 77. Al Hani's vehicles were taken at a checkpoint, one of their construction camps was overrun, looted, and partially burned by a mob, and a number of their sites were "occupied for

varying lengths of time by organized military units loyal to the regime." *Id.* ¶¶ 77–79. Much of Al Hani's equipment was either stolen or destroyed in the conflict. *Id.*

After the conflict, Strabag and Al Hani asked the government about "securing payment for unpaid work done prior to the Revolution; compensation for wartime damage; and resuming work on major uncompleted contracts." *Id.* ¶ 86. But they could not agree, so they commenced arbitration in June 2015. Resp't's Opp'n at 8.

While the contracts themselves provided that "disputes are to be resolved in Libyan courts," Strabag brought this dispute to arbitration under the Austria–Libya Bilateral Investment Treaty (the Treaty). Arbitration ¶ 1. Article 11 of the Treaty "permits a qualifying investor to submit a dispute to arbitration." Pet. ¶ 11. Consistent with the Treaty, Strabag submitted the dispute to the International Centre for Settlement of Investment Disputes (ICSID). *Id.* The ICSID has the authority "to administer certain categories of proceedings between States and nationals of other States that fall outside the scope of the ICSID Convention." ICSID Additional Facility Rules, Pet. Ex. 3, at 5, Dkt. 1-5.

The Arbitration took place over two weeks in Paris in July 2018. Arbitration ¶ 46. The parties and the ICSID Tribunal (the Tribunal) determined that the "legal seat" of the Arbitration would be Washington, D.C., as allowed by the Additional Facility Rules of the ICSID, and thus both parties agreed that the Federal Arbitration Act (FAA) would govern the Arbitration. The Tribunal concluded that Libya had breached its obligations under the Treaty and awarded Strabag €74,937,003.60 (plus interest) in damages. Resp't's Opp'n at 12; Arbitration ¶ 979.

Libya now petitions this Court to vacate the award of the Tribunal on the grounds that it violates § 10(a)(4) of the FAA. Pet. ¶ 58. Libya claims that the award is not sufficiently final and that the Tribunal exceeded its powers. *Id.* Alternatively, Libya claims that the award should

3

be modified to avoid double recovery for Strabag.  *Id.* ¶ 63.  Strabag seeks to confirm the award.  Resp't's Opp'n at 1.  This Court has jurisdiction to hear the parties' claims under 9 U.S.C. § 10(a).

## II.     LEGAL STANDARDS

"[T]he burden facing petitioners who seek judicial vacatur of arbitration awards is exceedingly high."  *FBR Cap. Mkts. & Co. v. Hans*, 985 F. Supp. 2d 33, 36 (D.D.C. 2013) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).  "[J]udicial review of arbitral awards is extremely limited," and courts "do not sit to hear claims of factual or legal error by an arbitrator as [they would] in reviewing decisions of lower courts."  *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) (quoting *Teamsters Loc. Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)).  "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable."  *Stolt-Nielsen*, 559 U.S. at 671 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam)).  "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).  This highly deferential standard "maintain[s] arbitration's essential virtue of resolving disputes straightaway," and prevents allowing arbitration to become "merely a prelude to a more cumbersome and time-consuming judicial review process."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568–69 (2013) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)).

Under the FAA, a party to an arbitration can, within one year of the award, apply to a federal court in the district where the award was made, *see* 9 U.S.C. § 10(a), for "an order

4

confirming the award," *id.* § 9.  "[T]he court must grant such an order unless the award is vacated, modified, or corrected . . . ." *Id.*  As the Supreme Court has explained, this is a clear mandate that is not "malleable" and leaves no discretion to the district court.  *Hall St. Assocs.*, 552 U.S. at 587.  The party seeking to vacate or modify the award bears the burden of proof.  *See Republic of Argentina v. AWG Grp. Ltd.*, 211 F. Supp. 3d 335, 344 (D.D.C. 2016), *aff'd*, 894 F.3d 327 (D.C. Cir. 2018).  A court may vacate the award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4).  A court also may modify an award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."  *Id.* § 11(a).  A party that "seeks to set aside an award in the country where it was issued" may seek a pre-judgment bond when "the other party seeks to enforce the award elsewhere."  United Nations Comm'n on Int'l Trade L., *Convention on Recognition and Enforcement of Foreign Arbitral Awards* (the "New York Convention"), art. VI, Introduction ¶ 1 (2016).

**III.    ANALYSIS**

Libya alleges three claims in support of its petition to vacate or modify the arbitration award: (1) that the award is not sufficiently final because it failed to fully address the set-off payments owed to Libya, *see* Libya's Mem. in Supp. of Pet. to Vacate at 5, Dkt. 1-1; (2) that the Tribunal lacked jurisdiction to arbitrate the matter, *id*. at 28; and (3) that the Tribunal impermissibly based its decision on "good order and fundamental fairness" instead of the relevant provisions of the applicable treaty or contracts, *id.* at 30.  All of Libya's claims lack merit, particularly given the high degree of deference accorded to arbitration awards, *see Stolt-Nielsen*, 559 U.S. at 671; *Oxford Health*, 569 U.S. at 568.  Accordingly, the Court will deny

Libya's petition to vacate or modify the award and grant Strabag's cross-motion to affirm the award.

### A. The Arbitration Award Was Final

"[I]t is a cardinal principle of arbitration that awards are reviewable and enforceable only if they are 'final'—that is, if they purport to resolve all aspects of the dispute being arbitrated." *Am. Fed'n of Gov't Emps., AFL–CIO, Local 3090 v. Fed. Lab. Rels. Auth.*, 777 F.2d 751, 755 (D.C. Cir. 1985); *see also* 9 U.S.C. § 10(a)(4). The finality of an arbitration award "does not require that the arbitration award resolve *every* outstanding issue that might arise in later litigation between the parties." *Pasha v. Janseshki*, 597 F. App'x 25, 26 (2d Cir. 2015) (quoting *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 686 (2d Cir. 1996) (arbitration was final despite defendant's "speculation that subsequent litigation will be required to ascertain respective project costs" because arbitrators considered parties' arguments about project costs when calculating the arbitration award amount)). Rather, an arbitration award is final when it is "intended by the arbitrator to be his complete determination of every issue submitted to him." *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 246 (D.D.C. 2006) (quoting *McKinney Restoration Co. v. Ill. Dist. Council No. 1*, 392 F.3d 867, 871 (7th Cir. 2004)); *see also Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003) (arbitration was *not* final when panel declined to decide an issue presented and left it for litigation).

Here, Libya argues that the arbitration award is not final because the Tribunal did not fully consider Libya's "set-off" claim. *See* Libya's Mem. at 2. To the contrary, the Tribunal thoroughly considered and rejected Libya's claim that any award to Strabag should be "set off" or reduced based on the pre-payments Libya made to Al Hani for work that Al Hani never

6

completed. The Tribunal first found "that it ha[d] jurisdiction to address [Libya's] set-off claim." Arbitration ¶ 897. It then went on to reject Libya's set-off claim with sixteen pages of thorough analysis. *See id.* ¶¶ 875–921. In doing so, the Tribunal addressed every argument offered by Libya, including unjust enrichment, *id.* ¶¶ 899–900, misuse of the advance payments, *id.* ¶¶ 901–02, bank guarantees, *see id.* ¶¶ 903–09, 918–21, the "wrapping up" of the contracts' requirements, *id.* ¶¶ 910–16, and restitution, *id.* ¶ 917.

Libya points to a single sentence in the 335-page decision to support its baseless claim that the Tribunal "deliberately refused to adjudicate the set-off," Libya Mem. 2: "In the view of the majority, this is a matter that must be addressed by the Parties, if it is to be addressed, outside the context of this arbitration," Pet. ¶ 58 (quoting Arbitration ¶ 921). But, as the Tribunal explained, it had no legal basis for awarding Libya a set-off because it did not have jurisdiction to address the outstanding guarantees, the very existence of which was disputed. *Id.* ¶¶ 918–20 ("If Respondent's claimed set-off were to be applied, those guarantees would remain. Claimant would be left exposed to the risk of what would in essence be double recovery by Respondent."); *see also id.* ¶ 919 ("A bank that extends an 'unconditional' and 'irrevocable' letter of guarantee has no duty, and perhaps no right, to pay some lesser amount on the basis of an arbitration ruling to which it is not party."). The Tribunal further found that Strabag and Al Hani used the advance payments consistent with the contracts, and thus, there was no double recovery in the award. Other courts confronted with similar extra-arbitral claims have likewise found that the existence of such claims does not defeat the finality of an arbitration. *See, e.g.*, *Ranger Offshore Mexico, S. de R.L. de C.V. v. Grupo Tradeco, S.A. de C.V.*, No. 4:15-cv-635, 2018 WL 780707, at *4 (S.D. Tex. Feb. 7, 2018), *appeal dismissed*, No. 18-20513, 2018 WL 7138080 (5th Cir. Dec. 26, 2018) (arbitration was final even though the panel did not resolve the issue of promissory notes

7

owed to one party as they were governed by Mexican law, outside the jurisdiction of the panel, and the panel "did not tie the outcome of arbitration award to the enforcement" of the notes).[1]

Because the Tribunal clearly addressed the issues before it, including the arguments relating to Libya's set-off claim, its award was sufficiently final as required by § 10(a)(4) of the FAA.[2]

B.   The Tribunal Did Not Exceed Its Powers

Libya next argues that the Tribunal exceeded its power in two respects. First, it alleges that the Tribunal "exceeded its powers in exercising jurisdiction over the parties' dispute." Libya's Mem. at 28. Alternatively, Libya alleges that the Tribunal's majority exceeded its powers "in refusing to resolve the single largest issue in the arbitration—whether the set-off for the approximately €98 million in unearned advance payments that Strabag received under the [c]ontracts" resulted in a double recovery for Strabag. *Id*. at 28–30. Both claims fail.

  1.   *Jurisdiction*

The Tribunal properly found that it had the authority to determine its own jurisdiction. Arbitration ¶ 1. Because the arbitration was brought under the Treaty, the ICSID Additional Facility Rules applied. Agreement between the Republic of Austria and the Great Socialist People's Libyan Arab Jamahiriya for the Promotion and Protection of Investments, Austria-Libya, art. XI, § 2(c)(ii), June 18, 2002, Dkt. 1-6. Thus, "the Tribunal ha[d] the power to rule on

---

[1] Given that the Tribunal spent sixteen pages thoroughly considering and rejecting the petitioner's arguments, *see* Arbitration ¶¶ 875–921, it is unethical for petitioner to assert that the Tribunal "deliberately refused to adjudicate the set-off," Libya's Mem. at 2.

[2] Libya's arguments that the award should be modified, *see* Libya's Mem. at 33–39, fail for the same reason—the Tribunal considered and rejected them with reasoned analysis, *see* Arbitration ¶¶ 899–921.

8

its own competence."  ICSID Rules, art. 45; *see also Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 122 (D.D.C. 2015).

Far from "ignor[ing] the plain language" of the Treaty, *Republic of Argentina v. AWG Grp. Ltd.*, 211 F. Supp. 3d 335, 344 (D.D.C. 2016), *aff'd*, 894 F.3d 327 (D.C. Cir. 2018) (quoting *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)), in deciding *unanimously* that it had jurisdiction over the dispute, the Tribunal fully construed and applied the relevant sections of the Treaty, considered the arguments of both parties, and consulted international law.  Arbitration ¶¶ 97–210.  The Tribunal found that the arbitration was brought under the Treaty because Strabag qualified as an "investor," *id.* ¶ 119; the contribution Strabag made to Al Hani was an "investment," *id.* ¶ 110; Al Hani "operated under the clear control of Strabag;" and "[t]here was no separation between Strabag and Al Hani," *id.* ¶ 134.  It then considered and dismissed Libya's arguments that Strabag, as the parent company, could not bring the arbitration because neither it nor the state of Libya were parties to the contract. *Id.* ¶¶ 167–88.  And it examined the terms of the contract between Al Hani and the Libyan Government, including those that specified Libyan courts as the proper venue for dispute resolution, before determining that Strabag was entitled to pursue his claims before the Tribunal, consistent with principles of international law. *Id.* ¶¶ 189–207.  In short, "[t]he evidence show[ed]" that "[Strabag] could not pursue its contract-related claims in Libyan courts in safety or with any reasonable expectation of a considered and expeditious outcome." *Id.* ¶ 208.  Even if this Court were to conclude that the Tribunal committed serious error, which it does not, this Court would lack the power to overturn the Tribunal's award because the Tribunal "constru[ed] or appl[ied] the contract and act[ed] within the scope of [its] authority."  *Republic of Argentina*,

211 F. Supp. 3d at 344 (quoting *United Paperworkers Int'l Union*, 484 U.S. at 38). The Tribunal did not clearly exceed its authority in exercising jurisdiction over this dispute.

### 2. "Good order and fundamental fairness"

As discussed above, *see supra* section III.A., the Tribunal did not refuse to resolve Libya's request for a set-off, *see* Arbitration ¶ 921. Nor did it deny Libya's proposed set-off based on "good order and fundamental fairness," as Libya claims. Pet'r's Reply at 11, Dkt. 14. The majority mentioned "fairness" as a consideration because the Tribunal had no jurisdiction over the Libyan banks that held the guarantees. But it denied Libya's set-off request because it found (among numerous other reasons) that Al Hani had used all the advance payments for uses that the contracts permitted. *See* Arbitration ¶ 900 ("[T]he advance payments . . . were utilized by Al Hani to carry forward the several construction projects in the face of delayed or non-payment" by the Libyan government). The Tribunal did not view its award as permitting a double recovery for Strabag.

Libya again misconstrues the record when it asserts that the dissenting arbitrator criticized the majority for rejecting Libya's request for a set-off on fundamental fairness grounds. *See* Libya's Mem. at 20–21. To be sure, the dissent disagreed with the majority's conclusion on the set-off claim. And he noted that the majority's decision to treat Strabag's award and Libya's payment and bank guarantees separately was, in his view, "not conducive to 'good order and fundamental fairness,' to which the majority—and indeed the *entire* Tribunal—aspired." Arbitration Dissent ¶ 44, at 12 (emphasis added). But it is improper to interpret this single sentence as criticizing the majority for deciding the set-off issue based on its own sense of the fairness.

Because the Tribunal did not deny the set-off based on a sense of good order and fundamental fairness, but rather as a result of its reasoned interpretation of the relevant contracts, the treaty, and international law, the Tribunal did not exceed its authority.

### C. Requested Relief

None of Libya's arguments in support of its set-off or other claims support vacatur, modification, or correction of the Tribunal's award. Thus, the Court will deny Libya's petition and grant Strabag's cross-motion to confirm the award. *See, e.g.*, *Equitas Disability Advocs., LLC v. Daley, Debofsky & Bryant, P.C.*, 177 F. Supp. 3d 197, 219 (D.D.C. 2016). Because neither party alleges that other litigation relating to this litigation is pending in any other court, the Court will also deny Strabag's request for a pre-judgment bond under Article VI of the New York Convention. *See Crytstallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 108 n.11 (D.D.C. 2017) (denying a pre-judgment bond request as moot).

## IV. CONCLUSION

For the reasons stated, it is

**ORDERED** that Libya's Petition to Vacate the Arbitration Award is **DENIED**. It is further

**ORDERED** that Strabag SE's Cross-Motion to Confirm the Arbitration Award is **GRANTED IN PART** as to the confirmation of the arbitration award and **DENIED IN PART** as to the request that Libya post a bond during the pendency of this litigation.

The respondent is directed to file a proposed judgment amount with all pre-judgment interest calculations performed as required under the Arbitration Award as of October 15, 2021. Respondent shall file this on the docket on or before October 15, 2021, along with a proposed

judgment order, a sworn declaration by the respondent's counsel who performs the calculations, and an exhibit with the spreadsheet documenting the calculations.

      **SO ORDERED**.

                                                                 _____
                                                                  DABNEY L. FRIEDRICH
                                                                  United States District Judge

September 30, 2021